**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| **ERIE INSURANCE COMPANY,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **vs.** | * | **Civil Action No.: _____** |
| | * | |
| **CLAIRE RAUSER AND CAROL RAUSER,** | * | |
| | * | |
| **Defendants.** | * | |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES Plaintiff, Erie Insurance Company (hereinafter "Erie"), through counsel, and files suit against Defendants Claire Rauser and Carol Rauser (hereinafter collectively "Defendants") pursuant to Rule 57 of the *Federal Rules of Civil Procedure* and Title 28 *U.S.C.* § 2201 *et seq.* In support of the same, Erie shows unto the Court as follows:

1.     Erie is an insurance company operating under the laws of the State of Pennsylvania with its principle place of business located in Erie, Pennsylvania. Erie is authorized to do business in the State of Tennessee.

2.     Defendants Claire Rauser and Carol Rauser are citizens and residents of Blount County, Tennessee. They may be served with process at 3458 Allegheny Loop Road, Maryville, Tennessee 37803.

1

3.      The jurisdiction of this Court is predicated on diversity of citizenship, Title 28,

§ 1332(a)(1).  The amount in controversy exceeds the sum of Seventy-five Thousand Dollars

($75,000).


4.      Erie issued to Defendants a homeowners policy (ErieSecure Home Insurance

Policy – Tennessee; Policy No. Q51-5803757) for property located at 5097 Allegheny Cove Way,

Maryville, Tennessee 37803.  (Attached hereto as Exhibit A is a certified copy of the policy.)


5.      Matthew Bryan of Bryan Insurance Agency was the agent who procured the Erie

policy.  A copy of the policy was provided to Defendants upon issuance.


6      When the application was made by Defendants for coverage with Erie, Defendants

specified that the dwelling located at 5097 Allegheny Cove Way, Maryville, Tennessee was a

residence under construction.  The dwelling to be constructed was represented by Defendants to

be 8,000 square feet and cost $2,000,000.  The application contained the following

**IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION
TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY.  PENALTIES
INCLUDE IMPRISONMENT, FINES AND DENIAL OF INSURANCE BENEFITS.**

\*\*\*

**I certify that I have given true and complete answers to the questions in this application.**

The application was signed by Defendant Claire Rauser.  (Attached hereto as Exhibit B is a copy

of the application for insurance;  personal information of Defendants has been redacted.)

7.     Based upon assertions made by Defendants as to the size and cost of the dwelling, the Erie policy was processed and issued to include "Guaranteed Replacement Cost" coverage. The policy included an estimate of replacement cost of $2,020,000.

8.     A fire occurred on or about March 3, 2019.

9.     The policy was in effect on the date of loss.

10.     Defendants made a claim to Erie for replacement cost coverage of their residence, which changed from the estimated replacement value stated in the policy ($2,020,000) to approximately $6,400,000.

11.     After the fire, Erie learned that the house was not 8,000 square feet, as alleged by Defendants in their application for insurance, but instead, 12,000 square feet. Defendants never informed or notified Erie of the same until after the loss.

12.     After the fire, Erie learned that Defendants' building permit listed the size of the house as 9,680 square feet, and not 8,000 square feet. Defendants never informed or notified Erie of the same prior to the loss. (Attached hereto as Exhibit C is a copy of the building permit.)

13.     After the fire, Erie learned that Defendants had reported before the fire to the Wall Street Journal that the house was to be 12,000 square feet, and cost "close to $4,000,000." This is in direct contrast of the size reported to Erie (8,000 square feet) and value reported to Erie

3

($2,000,000). (Attached hereto as Exhibit D is a copy of Wall Street Journal article.) Defendants never informed or notified Erie of the same prior to the loss.

14. After the fire, Erie learned that Defendants represented to Bell State Bank on a loan application before the fire that the value of the house was $4,000,000, and not $2,020,000. Defendants never informed or notified Erie of the same prior to the loss. (Attached hereto as Exhibit E is a copy of said loan application dated March 30, 2018; personal information of Defendants have been redacted.)

15. Erie issued a reservation of rights letter to Defendants on or about May 8, 2019. (Attached hereto as Exhibit F is the reservations of rights letter issued by Erie.)

16. Erie issued a supplemental reservation of rights letter to Defendants on or about May 17, 2019. (Attached hereto as Exhibit G is the supplemental reservation of rights letter issued by Erie.)

17. Erie made payment to Defendants in the amount of $2,020,000 on or about July 25, 2019 for the policy's full listed estimated replacement value for the dwelling as set forth in the policy.

18. As of the date of this filing, Erie has made several payments to Defendants in regards to other coverages, including personal property ($715,953.62), additional living expenses

4

("ALE") ($116,656.55), debris removal ($57,852.32), and temporary fencing ($7,476.00) collectively totaling $897,938.49.

19.    The policy contains the following language which is pertinent to Erie's request for a declaratory judgment:

### AGREEMENT

In return for "**your**" timely premium payment and "**your**" compliance with all of the provisions of this policy, "**we**" agree to provide the coverages "**you**" have purchased. "**Your**" coverages and amounts of insurance are shown on the "**Declarations**," which are part of this policy.

This agreement is made in reliance on the information "**you**" have given "**us**," and is subject to all the terms of this policy.

This policy, with coverage agreements, limitations, exclusions and conditions, the "**Declarations**" and applicable endorsements and waivers, constitute the entire agreement between "**you**" and "**us**."

### RIGHTS AND DUTIES – CONDITIONS - SECTION I

\*\*\*

### AUTOMATIC ADJUSTMENT OF COVERAGE AMOUNTS

This policy provides "**you**" with a guard against the effects of inflation in construction costs for "**your**" dwelling, other structures and personal property.

### Dwelling Coverage

The amount of insurance applying to the Dwelling is the "**replacement cost**" at the time of loss.

"**We**" will adjust the premium for the next policy period to reflect any change in the "**replacement cost**."

### Notification Of Improvements To Dwelling

"**You**" must notify "**us**" or "**our**" Agent within 90 days of starting any improvements or additions which increase the "**replacement cost**" value of "**your**" Dwelling by $5,000 or more and pay any additional premium due. "**Your**" premium may be adjusted during the current policy period to reflect the additional amount of insurance. If "**you**" do not notify "**us**," "**we**" do not cover loss to such improvements or changes.

\*\*\*

5

**GENERAL POLICY DEFINITIONS**

"**Declarations**" means "**our**" form which shows "**your**" coverages, amounts of insurance, premium charges and other information.

This form is part of this policy. "**Declarations**" include forms titled Amended Declarations, Revised Declarations, Duplicate Declarations, New Declarations, Reinstatement of Coverage or Continuation Notice.

"**Replacement cost**" means

1.  in the case of loss or damage to buildings, the cost at the time of loss to repair or replace the damaged property with new materials of like kind and quality for the same use at the described location.

2.  in the case of loss or damage to personal property, the cost at the time of loss of a new article identical to the one damaged, destroyed or stolen. If the identical article is no longer manufactured or is not available, "**replacement cost**" means the cost of a new article similar to that damaged, destroyed or stolen and which is of comparable quality and usefulness.

"**We**", "**us**" or "**our**" means the Erie Insurance Company.

"**You**", "**your**" or "**Named Insured**" means the person(s) named on the "**Declarations**" under "**Named Insured**." Except in the RIGHTS AND DUTIES – GENERAL POLICY CONDITIONS Section, these words include the spouse of the person(s) named in Item 1. on the "**Declarations**" provided the spouse is a "**resident**."

20.     Defendants failed to timely – within 90 days as required by the policy - notify Erie of any improvements or additions which increased the size, value and "replacement cost" of the insured dwelling.

21.     By failing to notify Erie of improvements or additions to the structure which increased the replacement cost of Defendants' dwelling, Defendants violated the terms of the policy and voided Guaranteed Replacement Cost coverage for the improvements and additions to the structure.

22.     The policy also contains the following condition:

**RIGHTS AND DUTIES – GENERAL POLICY CONDITIONS - SECTIONS I & II**

**CONCEALMENT, FRAUD OR MISREPRESENTATION**

This entire policy is void as to "**anyone we protect**" if, before or after a loss:

1. "**anyone we protect**" has intentionally concealed or misrepresented any material fact or circumstance concerning this insurance;

2. there has been fraud or false swearing by "**anyone we protect**" as to any matter that relates to this insurance or the subject thereof; or

3. "**anyone we protect**" has engaged in fraudulent conduct as to any matter that relates to this insurance or the subject thereof.

In the event of Item 1., 2. or 3., "**we**" will not pay for any loss.

23.    Defendants intentionally concealed and / or misrepresented the size and value of the structure to Erie. Defendants' concealment and / or misrepresentations increased the risk of loss to Erie.

24.    Defendants violated <u>Tenn. Code Ann.</u> § 56-7-103, which states as follows:

No written or oral misrepresentation or warranty made in the negotiations of a contract or policy of insurance, or in the application for contract or policy of insurance, by the insured or in the insured's behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless the misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented *increases the risk of loss*. [Emphasis added.]

Defendants made material misrepresentations to Erie which increased Erie's risk of loss.

25.    Pursuant to the policy's coverages, definitions, conditions and exclusions, Erie denies that it owes Defendants any additional monies towards the replacement cost of the structure.

26.    There exists a justifiable controversy between and among the parties of such immediacy that this Court must declare the respective rights of the parties.

7

**WHEREFORE**, Erie respectfully prays that this Court (a) enter judgment that Erie does not owe any additional monies to Defendants due to Defendants' own violations of the Erie policy of insurance; (b) that it be awarded costs in its behalf expended, and (c) that this Court grant whatever further relief it does deem equitable and just.

**ERIE INSURANCE COMPANY**

By:     */s/ S. Morris Hadden*
S. Morris Hadden (BPR #000747)
Caroline R. Williams (BPR #029454)
Attorney for Erie Insurance Company
**HUNTER, SMITH & DAVIS, LLP**
1212 North Eastman Road
Post Office Box 3740
Kingsport, TN 37664-0740
(423) 378-8820; Fax: (423) 378-8801