IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ERIE INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff/Counter-Defendant, ) | |
| ) | |
| v. ) | No. 3:19-cv-00375-TRM-HBG |
| ) | |
| CLAIRE RAUSER AND CAROL ) | |
| RAUSER, ) | |
| ) | |
| Defendants/Counter-Plaintiffs, ) | |
| ) | |
| and, ) | |
| ) | |
| CLAIRE RAUSER AND CAROL ) | |
| RAUSER, ) | |
| ) | |
| Third-Party Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| HITSON INSURANCE, INC., BRYAN ) | |
| INSURANCE GROUP, MATTHEW ) | |
| BRYAN, AND MICHELE SELF, ) | |
| ) | |
| Third-Party Defendants. ) | |

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is a Motion for Sanctions for Spoilation of Evidence [Doc. 57], filed by Defendants Claire Rauser and Carol Rauser.[1] Plaintiff responded [Doc. 58] in opposition to the Motion, and Defendants filed a Reply [Doc. 63]. The Motion is ripe for adjudication.

---

[1] The Rausers have filed a Counterclaim and a Third-Party Complaint in this matter. For ease of reference, however, the Court will refer to the Rausers as "Defendants."

Accordingly, for the reasons further explained below, the Court **DENIES** Defendants' Motion [**Doc. 57**].

I.     **POSITIONS OF THE PARTIES**

Defendants move [Doc. 57] the Court, pursuant to Federal Rule of Civil Procedure 37(e), for entry of an order sanctioning Plaintiff, arguing that Plaintiff intentionally destroyed evidence that is relevant to the claims in this case. Specifically, Defendants request "an adverse inference instruction to the jury which requires the jury to infer that [Plaintiff] mishandled its own procedures and underwriting guidelines associated with the policy at issue." [Doc. 63 at 4].

For grounds, Defendants state that they served document requests requiring the production of Plaintiff's internal records bearing on both the underwriting of the policy at issue and the handling of the fire loss claim. Defendants state that Plaintiff's production revealed that Plaintiff utilizes an internal messaging system known as "Jabber," and in reviewing Jabber, Defendants discovered a conversation that occurred on March 8, 2019, five days after the fire. Specifically, Nicole Shields ("Shields"), Plaintiff's manager of underwriting for Tennessee and Kentucky, instructs Plaintiff's underwriter, Mark Trigilio ("Trigilio"), to remove from the underwriting software ("PUCM") a comment that he had made wherein he blames fellow employee, Leanne Berndt ("Berndt"), for failing to monitor his diary events while he was out on short-term leave.

Defendants state that Plaintiff confirmed that Shields asked Trigilio to edit a comment he made in PUCM. Defendants state that during Shields's deposition, Defendants inquired as to the incident, and Shields testified that PUCM is discoverable, so Plaintiff coaches its underwriters to provide only objective information and not subjective information. Defendants state that Shields further testified that she does not recall the comment verbatim but that it was subjective, so she coached the underwriter to make it objective and factual. Defendants argue that Shields's testimony establishes that she understood that PUCM entries were discoverable and that she had

2

the comment deleted to avoid discovery obligations. Defendants assert that they have established under federal law and Rule 37(e) that sanctions are warranted for Plaintiff's intentional destruction of evidence that is relevant to the claims.

Plaintiff responds [Doc. 58] in opposition to the Motion. Plaintiff states that sanctions are not appropriate because the edit to the comment was part of Plaintiff's normal business practices. Plaintiff asserts that it prefers for underwriters using PUCM to record only objective facts as opposed to subjective observations or criticisms. Plaintiff states that Shields requested that Trigilio revise his comment to comply with Plaintiff's business practices. Plaintiff states that Shields's Affidavit [Doc. 58-1] explains her regular business practice at the time was to review comments made by the underwriters and request, if necessary, to revise subjective comments to contain only objective observations pertinent to the file. Plaintiff states that Shields also provides training to underwriters regarding the same. Further, Plaintiff argues that it had no reason to know that litigation was imminent, and therefore, it cannot be found to have a culpable state of mind. Plaintiff states that the fire occurred on March 3, 2019, and that the initial comment in PUCM was made on March 6, 2019, and that Shields directed the underwriter to edit the comment on March 8, 2019. Plaintiff states that it did not hire counsel until April 5, 2019, and it did not file suit until September 26, 2019.

In addition, Plaintiff states that sanctions are inappropriate because it has admitted the facts that Defendants seek to establish through their Motion. Plaintiff states that Defendants have not been deprived of relevant information because Plaintiff admits that it missed a diary to follow up on the status of the Versailles-replica being built by Defendants. Plaintiff states that a diary was missed and that the underwriter tried to blame his co-worker, Berndt, for missing the diary.

Defendants reply [Doc. 63] that Plaintiff should have known that the evidence it destroyed was relevant to future litigation. Defendants state that the relevant inquiry is not whether Plaintiff

3

knew that future litigation was likely but whether it should have known of the likelihood of future litigation. Further, Defendants argue that no one, including Trigilio, knows what was said. Defendants explain that neither Shields nor Trigilio can remember the substance of the comment that was removed. Defendants submit that the subjective comment will likely explain how the diary was missed or the consequences of missing a diary.

## II. ANALYSIS

Accordingly, the Court has considered the parties' arguments, and for the reasons further explained below, the Court finds Defendants' arguments not well taken.

The Court will begin with a general overview of the law with respect to the requested sanctions and then turn to the facts of the present matter.

### A. Overview

Defendants cite to two sources of authority for their request: federal law and Rule 37(e). A party seeking sanctions for the spoilation of evidence must establish three conditions: (1) the party with control over the evidence must have had an obligation to preserve it at the time it was destroyed, (2) the accused party must have destroyed the evidence with a culpable state of mind, and (3) the destroyed evidence must be relevant to the other side's claim or defense. *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553-54 (6th Cir. 2010).[2] District courts have broad power to

---

[2] The Court will address the *Beaven* factors because Defendants have relied on them in their brief. The Court notes, however, that the Advisory Committee Note to the 2015 amendment to Rule 37(e) states, "[The Rule] therefore forecloses reliance on inherent authority or state law to determine when certain measures should be used." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. *See also Yoe v. Crescent Sock Co.*, No. 1:15-CV-3-SKL, 2017 WL 5479932, at *8 (E.D. Tenn. Nov. 14, 2017) (explaining that the Advisory Committee Note "states that the rule preempts resort to inherent power" but noting at least one other court has held that the court's "inherent power remains available") (other citations omitted); *see also Hugler v. Sw. Fuel Mgmt., Inc.,* No. 16CV4547FMOAGRX, 2017 WL 8941163, at *8 (C.D. Cal. May 2, 2017) (disagreeing that the court may not use its inherent authority to issue spoilation sanctions).

4

craft a proper sanction, but the sanction must "serve both fairness and punitive functions." *Arch Insurance Co. v. Broan–Nutone, LLC,* No. 11–6221, 509 F. App'x 453, 2012 WL 6634323 (6th Cir. Dec. 21, 2012) (citations omitted). The party seeking sanctions carries the burden of showing sanctions are appropriate. *Byrd v. Alpha All. Ins. Corp.*, 518 F. App'x 380, 384 (6th Cir. 2013).

Further, Rule 37(e) provides as follows:

> **(e) Failure to Preserve Electronically Stored Information.** If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> **(1)** upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> **(2)** only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> **(A)** presume that the lost information was unfavorable to the party;
>
> **(B)** instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> **(C)** dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37.

With the above guidance in mind, the Court turns to the present facts.

### B. Relevant Facts

On March 9, 2019, Shields and Trigilio engaged in a conversation via Jabber regarding the fire that destroyed Defendants' home. Shields states, "[H]ey can you please remove Leanne from your comment on Rauser?" [Doc. 57 at 3]. Trigilio indicates that he is not authorized to modify
5

the entry, and Shields replies, "[N]o I mean your comment where you blame her lol." [*Id.*]. Trigilio responds, "doh." [*Id.*].

During Shields's deposition, Defendants question her about her instruction to Trigilio to edit the comment. Shields testified that "i[f] a dwelling is in the course of construction when an application is written, the underwriter must set a diary to request the high value dwelling inspection at the time the dwelling is complete." [Doc. 58-3 at 1]. Shields stated that with respect to Defendants' dwelling, there were several diaries set "because the construction drug on." [*Id.*]. Shields testified that when the final diary approached, Trigilio was on short-term leave, so his diaries were assigned to Berndt "who failed to follow up on it." [*Id*. at 1-2]. Defendants inquired as to why Shields instructed Trigilio to remove the comment from PUCM, and Shields testified as follows:

> Yes, PUCM, as well all know, is discoverable. So we coach our underwriters to only provide relevant factual information. [Trigilio's] initial comment was placing blame, was very subjective in nature. So I coached him to correct that comment to make sure we were only recording facts of the situation, typical underwriting management.

[Doc. 58-3 at 2]. She stated that the comment was not deleted but modified. [*Id.* at 3]. Shields testified that Trigilio had commented, "LeeAnne Berndt failed to follow up on a diary" or "something to that effect." [*Id.*]. The following exchange occurred during Shields's deposition:

> Q. I thought you just testified that she failed to follow up on a diary?
>
> A. Yes, but it is not his position to say that she [Berndt] is to blame for this entire situation, which is what his comment led everybody to believe.
>
> Q. Well, his comment was she failed to follow upon a diary; is that correct?
>
> A. I don't have the comment to review. Clearly, at the time, I felt it was subjective in nature, and placing blame on LeeAnne

6

> in a manner that was not appropriate for PUCM, which is
> why I asked him to keep it factual.
>
> If it said verbatim LeeAnne Berndt failed to follow up on a
> diary, then that may be correct, but he also failed to follow
> up as well. So rather than including of that on PUCM, we
> stick to the facts and keep objective material there only.

[*Id.*]. Shields testified that she was not advised by counsel to alter the comment, testifying, "That occurred way back when we were handling this." [*Id.* at 4]. She denied knowing, at the time she gave the instruction, that the parties would dispute the claim. [*Id.*]. In addition, the following exchange occurred during her deposition:

> Q. You pointed out you had a concern that PUCM was discoverable right?
>
> A. No, you are incorrect. Actually, our underwriting management principles indicate that PUCM comments are always discoverable. They should be objective in nature.
>
> So when we are coaching out underwriters, we abide by that. It had nothing to do with this particular case, and where I thought it was going or didn't.
>
> Q. Well, you told him to modify it because you had a concern that it would be discovered; right?
>
> A. As we do with every other PUCM comment our underwriters put on.

[*Id.*]. Shields further testified that she discussed with Berndt that she (Berndt) failed to follow up on the diary, and Berndt responded, "I'm so sorry. I made a mistake." [*Id.* at 5].

Defendants also inquired about the comment during Trijilio's deposition, wherein the following exchange occurred:

> Q. Okay. And within the Jabber conversation you evidently made a comment where you, according to Ms. Shields, you blamed Ms. Berndt for missing your diary on checking whether the Rauser house was complete?

7

A. I put in a comment where I most likely said LeeAnne worked—diary transferred to LeeAnne Berndt, LeeAnne missed a diary, something to that effect.

It was not much. But she didn't like the wording.

Q. Well, it is really important for me to understand. There is no question that you removed that entry from the Jabber conversation; right?

A. I modified whatever I put in the – in my PUCM. My PUCMs are short and to the point. So if I put something that LeeAnne missed a diary, Nicki said that didn't read well; so amend it.

Q. Well, her testimony was you had made a subjective comment about her, and missing a diary wouldn't be subjective, would it. It would be objective.

So what was it that you actually removed from that conversation entry?

A. Again, I don't know. It was not much. It was not much of a comment. As far as my best recollection is, LeeAnne Berndt missed a diary.

Q. Why would there be any need to remove that from a PUCM?

A. I'm sure we went over it, but she told me to amend or modify my comment because it was putting blame on LeeAnne. So I amended it, changed a couple words, removed a couple words, but that is about it.

Q. Do you remember what words you changed?

A. No, I do not. I went over that. It was not much.

Q. Do you remember what words you changed?

A. No, I don't. It was not many. To me it was just putting a statement down—the diary was missed, and in my words I blamed LeeAnne.

That was not what the intent was. LeeAnne Berndt missed a diary, is what I put.

Q. And you believe in fact that is what happened; right?

8

> A. Correct. The diary was transferred to her, and she missed it.
>
> \*\*\*
>
> Q. But what you are confident is it was not this quoted statement that you put in there, nor removed or modified?[3]
>
> A. That doesn't sound like me, no. I can definitely say I didn't put that in there.

[Doc. 63-1 at 3-6].

Finally, Shields provided an Affidavit, stating that she recalls that Trigilio's comment placed blame on a co-worker for the failure to follow up on a diary. [Doc. 58-1 at ¶ 2]. She further states as follows:

> 3. I requested that Mr. Trigilio revise his comment to comply with Erie's business practice of only recording objective facts and observations, as opposed to subjective facts and criticism. I never requested that Mr. Trigilio remove his comment in its entirety. To the best of my knowledge, the comment was NOT removed in its entirety. Instead, it was revised to be an objective observation of a specific event which had occurred, namely that a diary was missed.
>
> 4. Recording objective facts versus subjective comments and criticisms is what Erie trains and requests that its underwriters do as part of their normal business practices. As Underwriting Manager, it was my regular business practice at the time of this particular incident to review comments made by my underwriters in the PUCM system, and if necessary, request that they revise their subjective comments to contain only objective observations pertinent to the file.
>
> 5. As Underwriting Manager, I provided training to my underwriters regarding the recording of objective facts instead of subjective observations. . . .

---

[3] Although not entirely clear from the deposition, the quoted statement appears to be from Plaintiff's counsel's letter to Defendants' counsel stating that Trigilio's comment was something to the effect of, "I was out on short-term leave and Leanne Berndt was to monitor my diaries and didn't follow up with the agents to verify if the Rauser home was complete." [Doc. 63 at 3].

9

[Doc. 58-1 at ¶¶ 3-5]. Attached to Shields's Affidavit is a copy of Plaintiff's Underwriting Documentation Module, which includes a discussion of subjective documentation versus objective documentation. [Doc. 58-2 at 9-12].

### C. Findings

The Court has considered the above law and facts and finds that the requested sanctions are not warranted. As mentioned above, Defendants request "an adverse inference instruction to the jury which requires the jury to infer that Erie mishandled its own procedures and underwriting guidelines associated with the policy at issue." [Doc. 63 at 4]. Plaintiff acknowledges, however, that its underwriters missed the diary. *See* Shields's Deposition [Doc. 58-3 at 3] ("If it said verbatim LeeAnne Berndt failed to follow up on a diary, then that may be correct, but [Trigilio] also failed to follow up as well."). As explained above, a party seeking sanctions for spoilation must show that the destroyed evidence is relevant. *Beaven*, 622 F.3d at 553-54. This condition is met if the moving party shows that the evidence "would have been relevant to the contested issue." *Byrd*, 518 F. App'x at 385. The subject of the comment does not relate to a contested issue. Plaintiff admits its underwriters missed the diary.

Defendants argue that the subjective comment will likely explain how the diary was missed and/or the consequences of missing the diary, which now Defendants will never be able to discover. Defendants do not sufficiently explain, however, how such issues are relevant to this case. The relevant fact is that Plaintiff's underwriters missed the diary. While neither Shields nor Truijilo is able to recall the original comment verbatim, they both testified that the original comment blamed Berndt for missing the diary. Their recollection is supported by Shields's instruction to Trigilio to remove "LeAnne" from the comment—"your comment where you blame her lol." [Doc. 57 at 3]. Accordingly, the Court finds that Defendants' arguments are not well taken.

10

The Court also finds sanctions under Rule 37 not warranted. As explained above, under Rule 37, the moving party must show that the electronically stored information should have been preserved, the nonmovant failed to take reasonable steps to preserve it, and the electronically stored information cannot be restored or replaced through additional discovery. Fed. R. Civ. P. 37(e). Upon a finding of those elements, in order to issue sanctions, the Court must find (1) prejudice to another party from the loss of the information, or (2) that the party acted with the intent to deprive another party of the information's use in the litigation. Fed. R. Civ. P. 37(e)(1) and (2).

Even if the comment should have been preserved, which is questionable given that the comment was edited as part of Plaintiff's business practices, the Court cannot find prejudice or that Plaintiff acted with the intent to deprive Defendants of the information's use in this case. With respect to prejudice, the Advisory Committee Note provides, "An evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. The Advisory Committee Note explains that "in some situations this may be a difficult," but in other situations, "the content of the lost information may be fairly evident, the information may appear to be unimportant, or the abundance of preserved information may appear sufficient to meet the needs of the parties." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

Here, for similar reasons as above, the Court finds Defendants are not prejudiced by the edited comment. The content of the original comment is fairly evident as Shields directs Trigilio to remove the comment blaming Leanne for the missed diary. [Doc. 57 at 3] ("[H]ey can you please remove Leanne from your comment on Rauser? . . . [N]o I mean your comment where you blame her lol."). Again, given that Plaintiff acknowledges that the underwriters missed a diary, the original comment blaming Berndt is not important to this litigation.

11

Further, the Court does not find that Plaintiff acted with the intent to deprive Defendants of the information's use in the litigation. Shields explains that as part of managing the underwriters, she trains underwriters to use objective language as opposed to subjective language. She states that she directed Trigilio to revise his comment to an objective observation of a specific event—that is, that a diary was missed—as opposed to placing blame on a specific underwriter. Further, for similar reasons as above, the Court does not find that Defendants are deprived of the information's use in this case given that Plaintiff acknowledges that the underwriters did not follow up on the diary.

Finally, Defendants argue that Shields and Trigilio are not able to recall the original comment and that upon reviewing a purported paraphrasing of Trigilio's comment during his deposition, Trigilio stated "[t]hat doesn't sound like me, no. I can definitely say I didn't put that in there." [Doc. 63-1 at 6]. As explained above, the substance of the original comment is fairly evident. With respect to Trigilio's above testimony, Defendants asked whether the original comment stated as follows: "I was out on short-term leave and Leanne Berndt was to monitor my diaries and didn't follow up with the agents to verify if the Rauser home was complete." [Doc. 63 at 3]. Trigilo testified that the sentence did not sound like something he would write. In his deposition, however, he discusses how his PUCM entries "are short and to the point" and that he most likely said, "[D]iary transferred to LeeAnne Berndt, LeeAnne missed a diary." [Doc. 63-1 at 4]. Although the wording between the paraphrased version of the original comment (which was provided by Plaintiff's counsel) and what Trigilio believed he likely wrote is not exact, the substance is the same (i.e., Berndt missed a diary). Accordingly, the Court finds Defendants' arguments not well taken.

12

## III. CONCLUSION

Accordingly, the Court hereby **DENIES** Defendants' Motion for Sanctions for Spoilation of Evidence by Plaintiff Erie Insurance Company [**Doc. 57**].

**IT IS SO ORDERED.**

ENTER:

_____
United States Magistrate Judge