| | |
|---|---|
| ERIE INSURANCE COMPANY, )<br>)<br>Plaintiff/Counter-Defendant, )<br>)<br>vs. )<br>)<br>CLAIRE RAUSER AND CAROL )<br>RAUSER, )<br>)<br>Defendant/Counter-Plaintiffs, )<br>)<br>)<br>AND )<br>)<br>CLAIRE RAUSER AND CAROL )<br>RAUSER, )<br>)<br>Third-Party Plaintiffs, )<br>)<br>vs. )<br>)<br>HITSON INSURANCE, INC., BRYAN )<br>INSURANCE GROUP, MATTHEW )<br>BRYAN, AND MICHELE SELF, )<br>)<br>Third-Party Defendants. ) | No.: 3:19-cv-00375-TRM-HBG |

## THIRD-PARTY DEFENDANTS' MOTIONS IN LIMINE I-II

Come the Third-Party Defendants Hitson Insurance, Inc., Bryan Insurance Group ("Bryan"), Matthew Bryan ("Mr. Bryan"), and Michele Self ("Ms. Self")[1] and move the Court to exclude certain evidence at the upcoming trial. Specifically, the Agency defendants request that

---

[1] The Third-Party Defendants are sometimes collectively referred to as "the Agency defendants" or "the Bryan defendants."

this Court enter an Order prohibiting the Rausers from offering the resignation letters of Ms. Self and witness Caitlyn Cook ("Ms. Cook") into evidence on the basis that those documents are not relevant to these proceedings and would result in unfair prejudice to Bryan and Mr. Bryan. The Agency defendants also ask the Court to enter an Order prohibiting the Rausers from offering into evidence documents or testimony that comprise Erie Insurance Company's ("Erie") policies, procedures, and guidelines regarding the company's internal and agency operations on the basis that such evidence is not relevant and is likely to confuse the jury regarding the standard of care analysis. In support of their Motions, the Bryan defendants state as follows:

I. **The resignation letters of Ms. Self and Ms. Cook should be excluded as irrelevant and unfairly prejudicial.**

Ms. Self and Ms. Cook both resigned from the Bryan Agency in early 2019 and contemporaneously submitted letters of resignation. The Rausers have designated the letters of resignation as exhibits that they intend to introduce at trial. [Doc. 140, P.14]. However, the letters are not relevant to this case and would unfairly prejudice the Agency defendants. As such, the Rausers should be prohibited from offering the resignation letters as evidence at trial.

"Evidence is relevant if: **(a)** it has any tendency to make a fact more or less probable than it would be without the evidence; and **(b)** the fact is of consequence in determining the action." FRE 401. "Irrelevant evidence is not admissible." FRE 402. Furthermore, the Court has discretion to exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FRE 403. The Rules of Evidence specifically prohibit character evidence to prove that a party acted in a certain way at a particular time. FRE 404.

The substantive portion of Ms. Cook's January 25, 2019 resignation email to Mr. Bryan states as follows:

> After much time and consideration, I have decided to resign from my position at Bryan Insurance Group. I have accepted a new position and will be starting shortly so this letter serves as my two week notice should you decide you want me to work it out. Before we part ways, I would like to say that I stopped looking forward to coming into my job, a place I used to love to come to and be a part of is not anything like it used to be and how it used to be was much better than where it feels like it is headed. I don't feel like we are on the same team anymore and mutual respect is needed to continue any relationship. You have a vision for your company and I have a vision for my future to continue to grow and be successful and sadly, these visions are no longer a match. I will not talk about Rob anymore to you, as I met with your privately to express my concerns, but I will tell you that this situation with him highly influenced my decision to leave. If I were to say this was easy to write and send this letter I would be lying but I have to do what is best not only me but for my family. I appreciate the opportunity and I wish you the best of luck in all you do.
>
> Also, I went ahead and have placed the company credit card, COSTCO card, and key in an envelope and laid on your desk.

[January 25, 2019 Resignation Email of Ms. Cook, attached hereto as Exhibit 1].

The February 1, 2019 letter that Ms. Self submitted to Mr. Bryan at the time of her resignation states:

> I am writing today to give my resignation and let you know that my last day with Bryan Insurance will be February 13th, which provides you with a notice.
>
> Over the last 26 years, I have served Hitson Insurance, Hitson Crum Blazer Insurance, and Bryan Insurance in multiple positions but most prominently as the Personal Lines Agent. I have supported numerous staff members in training and life transitions. At this point in time, I feel I must make a personal decision to transition myself into a different employment opportunity.
>
> I appreciate your support and understanding, and as you move forward in building your Bryan Insurance team, I wish you the very best. Anything I can do in the next eight working days to help with this transition, please let me know.

[February 1, 2019 Resignation letter of Ms. Self, attached hereto as Exhibit 2].

Nothing in either of these letters addresses anything that is even tangentially related to a fact that is of consequence in this matter. And, in addition to being irrelevant, the documents are unfairly prejudicial to the Bryan defendants. In particular, Ms. Cook's letter contains vague

3

Case 3:19-cv-00375-TRM-HBG   Document 141   Filed 10/04/21   Page 3 of 12   PageID #: 2623

statements regarding her opinion of the work environment at Bryan. The letter also addresses an unspecified situation with a coworker ("Rob") that could only serve to leave jury members wondering about what exactly occurred between Ms. Cook and that individual.

By proffering the resignation letters as evidence, the Rausers are essentially attempting to admit improper character evidence of the Agency defendants. The Rausers' intention is evidenced by their Memorandum of Law in Support of Motion for Summary Judgment, which states, "Ms. Cook's January 25, 2019 two-week notice email to Mr. Bryan is illuminating of the bad work environment that had clearly developed at the Agency." [Doc. 103, P. 15, fn. 6]. In other words, the Rausers intend to put on opinion evidence that the work environment at Bryan was *generally* bad with the hope that the jury will conclude that the Agency defendants were more likely to have acted negligently *in this specific occasion.* Use of evidence in such a manner is specifically prohibited by FRE 404.

Ms. Cook's resignation letter also constitutes inadmissible hearsay, as she is not a party to these proceedings and thus any statements in the letter do not constitute an admission of a party opponent. FRE 802.

The resignation letters are not relevant to these proceedings and are not admissible under FRE 401 and 402. Furthermore, the documents contain negatively connoted opinions that would be highly prejudicial to the Agency defendants. The argument related to the alleged "bad work environment" put forth by the Rausers in support of their dispositive motions demonstrates that the resignation letters are being proffered as improper character evidence. Accordingly, the Bryan defendants respectfully move the Court to exclude the letters from evidence and to prohibit the Rausers from discussing the same at trial.

## II. Evidence of Erie's internal and agency guidelines, policies, and procedures should be excluded as irrelevant and likely to confuse the jury regarding the standard of care.

Certain documents designated by the Rausers and certain arguments forwarded by them rely upon inadmissible internal operating documents from Erie that are not relevant to these proceedings and that have the potential of confusing the standard of care that the third-party defendants owed to the third-party plaintiffs. Namely, the Rausers have designated numerous documents comprising internal policies, guidelines, and operating procedures of Erie. For example, the Rausers have designated Erie Insurance Agency Agreement, Erie Insurance Company ErieSecure Underwriting Guidelines – TN, Erie Insurance Personal Lines Underwriting Procedures Manual, and the Erie Agency Guide. [Doc. 140, P. 14-17]. Similarly, the Rausers expert witness, Daryll Martin, dedicated an entire subsection of his report to Bryan's and Erie's alleged non-compliance with "Erie's guidelines and manuals." [Rausers' Expert Disclosure, relevant portions of which are attached hereto as Exhibit 3]. However, documents and discussions pertaining to Erie's internal and agency operating procedures are not relevant to the inquiry of whether Bryan or Erie acted negligently or breached any contractual provision. Furthermore, proffering evidence of Erie's internal procedures would create significant risk that jury members would confuse the objective legal standard of care with the various standards set forth in those documents. Documents comprising Erie's internal operating procedures, and testimonial evidence regarding the same, should be excluded from evidence as irrelevant and likely to lead to unfair prejudice and confusion.

The Rausers' failure to procure and other tort claims against the Bryan defendants require them to prove the traditional elements of negligence, i.e., duty, breach, causation, and damages. *Littleton v. TIS Insurance Services, Inc.*, No. E2018-00477-COA-R3-CV, 2019 WL 141517, at *3

(Tenn. Ct. App. 2019). "[I]nsurance agents, like other licensed professionals, owe a duty to their clients to perform consistent with the standards of care of their profession." *Id.* at 450 (Koch, J., concurring in part, dissenting in part) (citing 1 *New Appleman on Insurance Law* § 2.05[1]-[2], at 2-26 to -27). The Agency defendants owed a duty to the Rausers "to exercise reasonable skill, care, and diligence in effecting the insurance." *Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011)(citing 43 Am.Jur.2d *Insurance* § 163). Importantly, "Tennessee cases have not found internal policies to create a legal duty and have even questioned whether internal policies are admissible for any purposes whatsoever." *Johnson v. Rowsell*, No. M2009-00731-COA-R3-CV, 2009 WL 3460365, \*7 (Tenn. Ct. App. October 27, 2009)(quoting *Giggers v. Memphis Housing Authority,* No. W2006–00304–COA–R3–CV, 2007 WL 2216553, \*3 (Tenn.Ct.App.2007), *reversed on other grounds,* 277 S.W.3d 359 (Tenn. Feb 03, 2009).

A series of relatively recent decisions from the Tennessee Court of Appeals supports the principal that internal guidelines and operating procedures cannot establish a legally cognizable duty. In *Giggers*, the plaintiff sued the defendant housing authority after being attacked on its premises. 2007 WL 2216553, at \*2. The plaintiff argued that the housing authority's internal policies regarding screening of tenants created a legal duty to the plaintiff, and that its conduct failed to satisfy the standard set forth in its own internal procedures. *Id.* The trial court granted summary judgment in favor of the defendants, holding that "Tennessee cases have not found internal policies to create a legal duty and have even questioned whether internal policies are admissible for any purpose whatsoever." *Giggers*, No. W2006–

6

00304–COA–R3–CV, 2007 WL 2216553, *4. The Court of Appeals affirmed the grant of summary judgment in favor of the defendant. 2007 WL 2216553, *4.[2]

In *Johnson v. Rowsell*, the plaintiff in a car wreck case argued that the defendant trucking company's "failure to follow [its] drug screening policies [was] direct negligence." No. M2009-00731-COA-R3-CV, 2009 WL 3460365, *7 (Tenn. Ct. App. October 27, 2009). Citing *Giggers*, the Court of Appeals held that it could "find no authority that an internal policy creates a legal duty to the public at large." *Id.* at *8.

In *Acree v. Metropolitan Government*, an officer shooting case, the Court of Appeals affirmed summary judgment in favor of the municipal defendant where the plaintiff alleged that "officers failed to abide by internal police department guidelines" in serving a felony warrant. No. M2019-00056-COA-R3-CV, 2019 WL 7209601, at *1 (Tenn. Ct. App. Dec. 27, 019). In affirming the judgment, the Court noted that the plaintiff "presented no evidence and identified no authority to establish a duty based on the internal policies, procedures and guidelines." *Id.* at *10.

Federal courts in Tennessee have similarly acknowledged that internal operating procedures do not create a duty of care. See *A.K. by and through Kocher v. Durham School Services, L.P.*, Case No. 2:15-cv-02663-JTF-dkv, 2018 WL 2286208 *3 (W.D. Tenn. Feb. 2, 2018)(citing *Johnson v. Roswell* in ruling that a party's expert would be prohibited from offering testimony as to whether the defendant's "policies and procedures provided a duty of care for which any violations thereof were the proximate cause of [plaintiff's] injuries."); *Moore v. Western Carolina Treatment Center, Inc.*, 182 F. Supp.3d 825, 836 (E.D. Tenn. 2016)(observing that "the

---

[2] On appeal, the plaintiffs "apparently … abandoned their theor[y] of liability of [the housing authority] based upon negligence in screening Miller prior to leasing an apartment to him," and, thus, the Court of Appeals did not directly address the principle of duty based upon internal guidelines in its decision. 2007 WL 2216553, *6. Nonetheless, the trial court's reasoning is cited by later Court of Appeals decisions and is included in this analysis to clarify the progeny of the law.

plaintiff has cited no case law to support his contention that a physician's own policy creates such a legal duty and stands instead only on the assertion.")

Reading the Rausers' designation together with their previous filings, it is clear that they intend to argue that the Agency defendants were negligent for failing to adhere to the Erie policies and procedures. For example, in support of their Motion for Summary Judgment, the Rausers state that "it is critical this Court recognize … the Erie underwriter's and Agency's complete disregard of their own procedures in both the application and underwriting process, and later by Erie in the claim handling process." [Doc. 103, P. 7]. The Rausers go on to discuss two risk assessment tools that Erie has, the Marshall, Swift, Boeckh ("MSB") and the Millennium inspection ("high value inspection"), and to posit that the defendants were negligent by failing to utilize these tools in underwriting the Rauser policy. [Doc. 103, P. 7-12]. In describing the standard of care that the Agency defendants owed, the Rausers go so far as to argue that the Court should consider:

> Whether they complied with the guidelines, policies, practices, procedures or other standards they have established for themselves, or which Erie established for the agency to follow, in meeting its obligations to the insured before and throughout the coverage period when required to do so.

[Doc. 103, P. 46].

The Rausers' argument that the Bryan defendants were negligent in part because they failed to comply with Erie's underwriting guidelines, policies, and procedures is in direct conflict with the law of Tennessee, which provides that such internal regulations cannot create a legal duty and are not relevant to the analysis of the same. Rather, the duty of care is that of a reasonable insurance producer, which has nothing to do with Erie's subjective policies distributed to its employees and agents. In short, there exists "no authority to establish a duty based on the internal policies, procedures and guidelines." *Acree*, 2019 WL 7209601, at *10.

Regardless of the case law from the Tennessee Court of Appeals addressed above, these documents are simply not relevant under Federal Rule of Evidence 402. The MSB and the Millennium inspection are tools that Erie chooses to utilize to assess risks during the underwriting process. The tools are not services to be rendered to insureds. Neither Erie nor the Agency owe any obligation to an insured to produce an MSB or schedule a Millennium inspection before underwriting a risk. Similarly, no insured is entitled have an MSB or Millennium inspection ordered for his property.

In other words, if Erie wishes to insure a property by relying solely on the representations of an insured, that is the company's prerogative. If the insured makes a misrepresentation in the application, the insured risks forfeiting coverage. Otherwise, Erie assumes the risk of insuring the property subject to all contractual terms and provisions being met.

The irrelevant nature of the guidelines related to the MSB and the Millennium inspection is further demonstrated by the testimony of the Erie underwriter handling the Rausers' application, Mark Trigilio. Specifically, Mr. Trigilio testified that (1) he does not review any MSB on a house under construction, and (2) that an agent is not supposed to order a Millennium inspection on a house under construction until the house is complete, which never occurred in this case. [August 20, 2020 Deposition of Mark Trigilio at 36-38; 124-125, select portions of which are attached hereto as Exhibit 4].

While the Rausers may argue that the Erie procedures are relevant to the breach of contract claim against Erie, that position is likewise unconvincing. Erie entered into a contract to insure the Rauser dwelling for guaranteed replacement cost. The jury will either decide (1) that Erie is released from its contractual obligations based upon a misrepresentation made by Mr. Rauser, or (2) that Erie is obligated under the contract to pay the Rausers the total cost of replacing the
9

dwelling. Any measures that Erie decided to take or not take in determining whether to enter into the contractual relationship are irrelevant to the charge of the jury.

To be clear, the Agency defendants *are not* asking the court to prohibit the Rausers from arguing that Bryan or Erie *should have* produced an MSB or ordered a Millennium inspection, or from offering expert testimony supporting that argument. The Agency defendants *are* asking the Court to prohibit the Rausers from introducing guidelines, policies, or procedures of Erie that relate to how the company and its agents underwrite given risks or from arguing that such documents are relevant to the standard of care. As stated by Mr. Trigilio, "[G]uidelines are just that, guidelines. They are not etched in stone." [Exhibit 4, 103].

In this case, the jury must determine whether Mr. Rauser made a material representation during the application process and whether the Agency defendants met the standard of care consistent with their profession. Erie's internal policies and agency guidelines are not relevant to either of these inquiries. Moreover, the guidelines pose a significant danger of confusing the jury into believing that the Agency defendants were negligent based upon a perceived failure to satisfy such internal regulations. Accordingly, the Agency defendants respectfully request that the Court prohibit the Rausers from introducing the Erie Secure Underwriting Guidelines [Doc. 97, Exhibit 3] , the Agency Agreement [Doc. 104, Exhibit W, Page ID # 2012-2023], and any other internal guidelines or operating procedures at trial in this matter. Furthermore, the Agency defendants ask this Court to prohibit the Rausers from offering or soliciting testimony regarding Erie's internal guidelines, policies, and procedures. Finally, the Bryan defendants request that the Court prohibit the Rausers from arguing that those documents created any standard of care or that the Agency breached any standard of care by allegedly failing to adhere to such policies or guidelines.

WHEREFORE, Third-Party Defendants respectfully request that the Court GRANT these Motions in Limine.

This the 4th day of October, 2021.

/s/ Nathaniel D. Moore
Robert A. Crawford, (BPR #007396)
Nathaniel D. Moore (BPR# 031520)
KRAMER RAYSON, LLP
800 S. Gay Street, Suite 2500
P.O. Box 629
Knoxville, TN 37901
(865) 525-5134

Jeffrey P. Hubbard, (BPR #2830)
Hubbard, Mitchell, Williams & Strain, PLLC
P.O. Box 13309
Jackson, MS 39236
(601) 707-3431

*Attorneys for Defendants, Hitson Insurance, Inc., Bryan Insurance Group, Matthew Bryan, and Michele Self*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 4th day of October, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

/s/ Nathaniel D. Moore
Nathaniel D. Moore (BPR# 031520)