IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| ERIE INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| vs. | ) | No.: 3:19-cv-00375-TRM-HBG |
| | ) | |
| CLAIRE RAUSER AND CAROL RAUSER, | ) | |
| | ) | |
| Defendant/Counter-Plaintiffs, | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| CLAIRE RAUSER AND CAROL RAUSER, | ) | |
| | ) | |
| Third-Party Plaintiffs. | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HITSON INSURANCE, INC., BRYAN INSURANCE GROUP, MATTHEW BRYAN AND MICHELE SELF, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

**CLAIRE AND CAROL RAUSERS'
PRE-TRIAL BRIEF**

Defendants/Counter-Plaintiffs/Third-Party Plaintiffs Claire Rauser and Carol Rauser ("Rausers"), pursuant to Section 3 of the modified Scheduling Order entered on May 19, 2021 (Doc. 137), submit this Pre-Trial Brief.

**INTRODUCTION & BACKGROUND**

This is an insurance coverage dispute arising from a fire which caused the total loss of the Rausers' home and all contents in March 2019. The insurer, Erie Insurance Company ("Erie"), has paid the Rausers $2,020,000.00 towards the replacement cost of their home pursuant to

ErieSecure Home Insurance Policy – Tennessee; Policy No. Q51-5803757 (the "Policy"). (Doc. 1). The Rausers contend they are entitled to the actual replacement of $5,919,440.00 under the Policy. (Doc. 107 at Ex. A).

Erie has filed a declaratory judgment action seeking a declaration that it does not owe any additional monies to the Rausers. (Doc. 101). Erie relies on two defenses to coverage: 1) an inapplicable Notification of Improvements to Dwelling provision in the Policy; and 2) alleged misrepresentations made by the Rausers. The applicability of the Notification of Improvements to Dwelling provision is a remaining question of law which must be resolved by the Court as further discussed below. The Court has already determined that there are questions of fact concerning whether the Rausers made misrepresentations and, if so, whether any misrepresentation relates to the Policy or the subject thereof and that, therefore, these issues must be submitted to the jury.

This trial will also involve the jury's consideration of counterclaims by the Rausers against Erie for breach of contract, estoppel due to negligence, reformation of contract, and punitive damages, and third-party claims by the Rausers against the insurance agents, Hitson Insurance, Inc., Bryan Insurance Group, Matthew Bryan, and Michelle Self (collectively "Third-Party Defendants") for negligent misrepresentation, negligence, and breach of fiduciary duty. (Doc. 97; Doc. 155).

The Rausers contend that they made no misrepresentations in connection with the Policy and that, instead, both Erie and the Third-Party Defendants misrepresented the coverage afforded by the Policy and the procedures that would be followed to ensure that the Rausers' home was adequately insured. Additionally, the Rausers contend that Erie and the Third-Party Defendants failed to exercise diligence and reasonable care in their investigation of the nature and value of

the Rausers' home building project, provision of the services required to maintain proper coverage, and failure to comply with Erie's mandated policies designed to ensure that it and its agents insure to value.

## EVIDENTIARY AND LEGAL ISSUES

**1.      Evidentiary Issues.**

The parties have filed multiple motions *in limine* addressing various evidentiary issues to be decided by the Court in advance of trial. The Rausers adopt the arguments, positions, and citations stated in the Rausers' motions *in limine* and responses to the motions *in limine* filed by Erie and the Third-Party Defendants.

**2.      Unresolved question of law regarding inapplicability of "Notification of Improvements to Dwelling" provision in the Policy.**

**a.      The applicability of the "Notification of Improvements to Dwelling" provision is a question of law for the Court to resolve.**

This case still involves at least one purely legal issue which must be resolved by the Court rather than the jury in connection with Erie's Complaint for declaratory judgment. The Policy contains the following provision:

> **Notification Of Improvements To Dwelling**
>
> "**You**" must notify "**us**" or "**our**" Agent within 90 days of starting any improvements or additions which increase the "**replacement cost**" value of "**your**" Dwelling by $5,000 or more and pay any additional premium due. "**Your**" premium may be adjusted during the current policy period to reflect the additional amount of insurance. If "**you**" do not notify "**us**," "**we**" do not cover loss to such improvements or changes.

(this provision will be referenced herein as the "Notification Provision") (Joint Appendix, Doc. 104 at p. 120). The Rausers argued in their motion for summary judgment that the Notification Provision was inapplicable to the Rausers construction project until the Rausers moved in and

the structure became a "Dwelling" in July 2018. (Doc. 103 at pp. 19 – 22). The Rausers also made this argument in opposition to Erie's motion for summary judgment. (Doc. 115 at pp. 17-19). Erie failed to address this issue in its summary judgment filings and the Court did not resolve this issue in its Order on summary judgment. (Doc. 155).

The determination of whether the Notification Provision is applicable to the circumstances of this case is a question of law for the Court, rather than the jury, to decide. "The interpretation of a contract is a question of law and not one of fact." *Williams v. Larry Stovesand Lincoln Mercury, Inc*., No. M2014-00004-COA-R3-CV, 2014 Tenn. App. LEXIS 665, at *12 (Tenn. Ct. App. Oct. 15, 2014). "However, where a provision is ambiguous—that is, susceptible to more than one reasonable interpretation—the parties' intent cannot be determined by a literal interpretation of the language [and] . . . the court must resort to other rules of construction." *Id.* at *13-14. The interpretation of a contract can only be presented to a jury if an ambiguity remains unresolved following the Court's application of the rules of construction to the provision in dispute. *See 101 Constr. Co. v. Hammet*, No. M2018-01321-COA-R3-CV, 2019 Tenn. App. LEXIS 529, at *15 (Tenn. Ct. App. Oct. 30, 2019) ("the first question this court must answer is whether an ambiguity exists in the language of the contract, which left unresolved by the rules of construction, may be submitted to the jury."). Given the circumstances of this case, there can be no unresolved ambiguity which is presented to the jury for determination because, in the event the Court determines that the term "Dwelling" is ambiguous, Tennessee law requires the ambiguity to be resolved, as a matter of law, in favor of the Rausers. *Lammert v. Auto-Owners (Mut.) Ins. Co*., 572 S.W.3d 170, 179 (Tenn. 2019).

### b. The Notification Provision did not apply to the Rauser home until it became a "Dwelling" in July 2018.

The Notification provision only applies to improvements or additions to a "Dwelling." (Joint Appendix, Doc. 104 at p. 120). As this Court recognized in its summary judgment Order, the term "'Dwelling,' while capitalized in some places but not in others within the Policy, is not a defined term within the Policy." (Doc. 155 at p. 4). However, when read in conjunction with the remaining definitions and terms of the Policy, the meaning of Dwelling is clear: it is the building in which the insured resides.

Under its "Dwelling Coverage" provision, the Policy only provides "Dwelling Coverage" to the "dwelling **at** the 'residence premises' shown in the 'Declarations:'"

> OUR PROMISE—Dwelling Coverage
>
> "**We**" will pay for loss to:
>
> 1. "**your**" dwelling **at** the "**residence premises**" shown on the "**Declarations**." Dwelling includes attached structures, building equipment, fixtures, including solar panels and windmills servicing the premises.
>
> 2. construction material at the "**residence premises**" for use in connection with "**your**" dwelling.
>
> This coverage does not apply to land and water, including natural water, above or below the surface of the ground.

(Doc. 104 at p. 111) (emphasis to "at" provided; emphasis to remaining terms in original). "Residence premises" is defined in the Policy as "the dwelling where '**you**' reside, including the structures and grounds, or that part of any other building where '**you**' reside and which is shown as '**residence premises**' on the '**Declarations**.'" (Id.) (emphasis in original). Accordingly, the "Dwelling coverage" supplied by the Policy only applies to a "dwelling" which is located "at" the "residence premises," which, by the express terms of the Policy, only includes the place

where the insured *resides* (Id.). Because the dwelling coverage provided by the Policy only applies to a building in which the insured resides, the term "'your' Dwelling," as that term is used in the Notice Provision, must similarly mean the building in which the insured resides.

Erie representatives have adopted this interpretation of the Policy's meaning of the term "Dwelling." When asked to identify when the Rauser structure became a "dwelling," Erie's claims examiner, Keith Doak, testified, "[w]ell, we don't exactly know. But I suspect it would have been sometime in July of 2018 or August of 2018, when they moved into the home." (Id. at pp. 424-425). Similarly, Erie's Property Claims Examination Manager, Scot Morgason, testified that the meaning of the term "Dwelling" under the Policy is "clear[ly] and unambiguous[ly] . . . the place in which you reside on a full-time basis." (Id. at 434).

Based on the clear language of the Policy, as admitted by Erie, the Notification Provision did not apply to the Rauser home, if at all, until the Rausers began residing in it. Therefore, the Rausers had no obligation under the Policy to notify Erie or the Third-Party Defendants of any improvements or additions to their home, with the very limited exception perhaps of any improvements or additions which were started after the Rausers moved in and the home became a "Dwelling" in July 2018. (Doc. 104 at p. 120). As the party asserting the Notice Provision as a defense to coverage, Erie bears the burden of proving that the Rausers performed any improvements or additions to the home after July 2018 which exceeded $5,000.00. On the same hand, Erie must be precluded from presenting the Notice Provision as a defense to coverage for any pre-July 2018 additions or improvements because the Notice Provision is inapplicable to any such additions or improvements.

c.  **If the Court determines that the meaning of "Dwelling" under the Notice Provision is ambiguous, the Court is required, as a matter of law, to find that the Rausers' interpretation is controlling.**

Despite the admissions of its testifying representatives, Erie takes the legal position in this matter that the term "Dwelling" in the Notification Provision includes the Rauser structure at all times, even before it was completed and became a residence. In the event the Court does not agree with the Rausers' and the Erie representatives' interpretation of the term "Dwelling" (i.e., the home in which the insured resides), the term is, at a minimum, ambiguous in that it is susceptible to more than one reasonable interpretation. If the Court finds the term to be ambiguous, the Court "must resort to other rules of construction . . . [and] [o]nly if the ambiguity remains after application of the pertinent rules of construction does the legal meaning of the contract become a question of fact." *Regions Ins., Inc. v. Hanback*, No. 3:16-cv-897, 2017 U.S. Dist. LEXIS 153064, at *7 (M.D. Tenn. Sep. 20, 2017). However, under the circumstances of this case, a finding of ambiguity would require the Court to give effect to the Rausers' interpretation of the term as a matter of law.

Tennessee law imposes a mandatory rule of construction which requires that "when [policy] language is ambiguous, it is to be 'construed against the insurance company and in favor of the insured.'" *Lammert v. Auto-Owners (Mut.) Ins. Co.*, 572 S.W.3d 170, 179 (Tenn. 2019). Stated more succinctly, "[u]nder Tennessee law, ambiguities in insurance contracts are strictly construed against the insurance companies and in favor of the insured . . . [and] the insured's interpretation [is] controlling." *Id.*; *see also Tata v. Nichols,* 848 S.W.2d 649, 650 (Tenn. 1993) ("Where language in an insurance policy is susceptible of more than one reasonable interpretation [] it is ambiguous . . . Where the ambiguous language limits the coverage of an insurance policy, that language must be construed against the insurance company and in favor of

the insured."); *Swordfish Fitness of Franklin, Inc. v. Markel Ins. Co*., No. 3:20-cv-00876, 2021 U.S. Dist. LEXIS 188300, at **8-9 (M.D. Tenn. Sep. 30, 2021) ("When a provision that purports to limit insurance is ambiguous, it must be construed against the insurance company and in favor of the insured.") (quoting *Tata v. Nichols,* 848 S.W.2d at 650).

Accordingly, even if the Court finds the term "Dwelling" in the Notification Provision to be ambiguous, the Court must give effect to the Rausers' interpretation of the term and find that the Notification Provision did not apply to the Rauser building until it became a residence in July 2018. The practical implication of this issue is that Erie must be precluded from raising the Notification Provision as a defense to coverage for any improvements or additions to the Rauser structure which were performed prior to the date the Rausers moved into the home in July 2018. This issue must be resolved prior to trial as Erie is proposing to include jury instructions and a section on the verdict form which treat the Notification Provision as a wholesale defense to all work performed on the Rauser structure after the date the Rausers submitted their application for insurance.

**3. Remaining issues for trial.**

The Court recently issued a detailed Order ruling on the parties' cross-motions for summary judgement. (Doc. 155). The Court is, undoubtedly, aware of the respective factual and legal contentions of the parties in light of the recent Order; accordingly, the Rausers will not restate their contentions in this Brief. Instead, the Rausers will identify their understanding of the issues that remain for trial, which are as follows:

1) Did Mr. Rauser make a post-loss misrepresentation in June 2019 regarding contacting or soliciting quotes from other insurance agencies? If so, does such a representation "relate[] to" the Policy "or the subject thereof" and thereby void

8

coverage under the "Concealment, Fraud or Misrepresentation" provision of the Policy?

2) Did Mr. Rauser make a misrepresentation on the insurance application regarding whether any company had "declined, cancelled, or refused to renew any similar insurance?" If so, was the misrepresentation made with actual intent to deceive (to be decided by jury) or did the misrepresentation increase the risk of loss (to be decided by the Court)?

3) Did the Erie application seek information from Mr. Rauser regarding the finished value of the home by including a space for "Amount of Insurance: Dwelling" on the application?

4) If the answer to the prior question is yes, did Mr. Rauser make a misrepresentation on the insurance application regarding the value of the home? If so, was the misrepresentation made with actual intent to deceive (to be decided by jury) or did the misrepresentation increase the risk of loss (to be decided by the Court)?

5) Did Erie seek information from Mr. Rauser regarding the anticipated square footage of the completed home?

6) If the answer to the prior question is yes, did Mr. Rauser make a misrepresentation on the insurance application regarding square footage? If so, was the misrepresentation made with actual intent to deceive (to be decided by jury) or did the misrepresentation increase the risk of loss (to be decided by the Court)?

7) Did Mr. Rauser make a misrepresentation on the insurance application regarding the status of construction of the home? If so, was the misrepresentation made with actual intent to deceive (to be decided by jury) or did the misrepresentation increase the risk of loss (to be decided by the Court)?

8) To the extent the jury finds that Mr. Rauser made a misrepresentation, did Erie or its agents reasonably rely on such information where Erie's and its agents' procedures pertaining to the gathering of such information were not followed?

9) What is the actual replacement cost to reconstruct the Rauser home?

10) Has Erie breached its contract with the Rausers to provide coverage for the guaranteed replacement cost of the Rauser home?

11) Is Erie estopped from denying coverage for the guaranteed replacement cost of the Rauser home as a result of its negligence, the negligence of the Third-Party Defendants, or any misrepresentation made by the Third-Party Defendants?

12) At the time of Policy formation, were the Rausers and Ms. Self operating under a mutual mistake of fact or law with respect to the Policy providing builder's risk coverage, course of construction coverage, and/or guaranteed replacement cost coverage with the estimate of value to be determined by the performance of a home inspection upon completion of the home?

13) Are the terms of the Policy materially different from those agreed upon by the Rausers and Ms. Self with respect to builder's risk coverage, course of construction coverage, and/or guaranteed replacement cost coverage with the estimate of value to be determined by the performance of a home inspection upon completion of the home?

14) Did the Rausers, or Ms. Self, or both intend for the Policy to provide builder's risk coverage, course of construction coverage, and/or guaranteed replacement cost coverage with the estimate of value to be determined by the performance of a home inspection upon completion of the home?

15) If so, were the Rausers grossly negligent in their belief or intent that the Policy provided builder's risk coverage, course of construction coverage, and/or guaranteed replacement cost coverage with the estimate of value to be determined by the performance of a home inspection upon completion of the home?

16) Was Erie's denial of guaranteed replacement cost a result of intentionally wrongful, fraudulent, malicious, or reckless conduct such that the Rausers are entitled to punitive damages?

17) Did Ms. Self negligently misrepresent the terms of the Policy or the fact that the Rauser home would be inspected upon completion to determine its value? If so, did Mr. Rauser justifiably rely on Ms. Self's representation?

18) Have the Rausers suffered harm as a result of negligent acts by the Third-Party Defendants?

19) Have the Rausers suffered harm as a result of a breach of fiduciary duty by the Third-Party Defendants?

20) By failing to consider and account for the negligence of its own underwriter and the negligence of its agent in its coverage determination, did Erie negligently handle the Rausers' claim?

The foregoing issues for trial may be supplemented or modified as a result of the Court's consideration of the legal issues raised in this brief or the Court's rulings on evidentiary or other matters raised during the Pre-Trial Conference.

Respectfully submitted,

s/Jared S. Garceau
David A. Draper, Esq. (BPR #016067)
ddraper@lewisthomason.com
Jared S. Garceau, Esq. (BPR #033304)
jgarceau@lewisthomason.com

LEWIS THOMASON, P.C.
One Centre Square, Fifth Floor
620 Market Street
P.O. Box 2425
Knoxville, TN 37901
(865) 546-4646

*Attorneys for Claire Rauser and Carol Rauser*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 20th day of October 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

s/Jared S. Garceau

10715546 / 2881